597 So.2d 171 (1992)
STATE of Louisiana, Appellee,
v.
Louis RUFFINS, Jr., Appellant.
No. 23,459-KA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1992.
*172 Indigent Defender Office by Kurt J. Goins, for appellant.
Richard P. Ieyoub, Atty. Gen., Paul J. Carmouche, Dist. Atty., Stanley Lockard, Hugo Holland, Asst. Dist. Attys., for appellee.
Before SEXTON, LINDSAY and STEWART, JJ.
STEWART, Judge.
Defendant, Louis Ruffins, Jr., was charged by indictment with second degree murder, in violation of LSA-R.S. 14:30.1. Following a jury trial, he was convicted as charged of second degree murder and sentenced to serve life in prison at hard labor without benefit of parole, probation, or suspension of sentence.
Defendant appeals his conviction asserting that the trial court erred by denying his motion for post-verdict judgment of acquittal and motion for new trial.[1] We affirm the conviction.

FACTS
In the instant case, the evidence adduced at trial disclosed that this incident occurred on April 16, 1990 at approximately 10:30 p.m. The participants, (1) Troy Price (Price), (2) defendant, Louis Ruffins, Jr. (Ruffins), (3) the victim, Gerald Moore (Gerald), and (4) defendant's brother, Michael Ruffins (Michael), had known each other for many years.
On the day of the incident, Price saw Ruffins at a liquor store on Penick Street and Jewella Avenue in Shreveport at about 7:00 p.m. Ruffins spoke to Price belligerently, but Price thought he was joking. They argued briefly about Ruffins giving Price a ride in his car, but they went their separate ways. Price saw Ruffins again about 10:30 p.m. as Price walked by Ruffins' home. Ruffins called Price a "pussy" and they talked about who could whip whom. Ruffins grabbed a stick and chased Price down the street, but Price again thought it was a joke.
Price went to the house of the victim, Gerald where they talked for a while. Gerald asked Price if he could borrow a black shirt to wear to school and Price agreed to lend Gerald the shirt. Price and Gerald were on their way to Price's house to get the shirt when they saw Ruffins in his yard. Ruffins, Price, and Gerald "got to joking" about who could whip whom and started to wrestle. Price fell on top of Ruffins and thereafter Ruffins got up and went into the house leaving Price and Gerald outside in the yard. Ruffins later returned with his brother, Michael, who held *173 a brief conversation with Gerald and Price and then went back into the house.
The horseplay continued until Ruffins pulled a knife from his pants and began swinging it at Price. Ruffins cut Price on the stomach. Thereafter, Price ran but fell and Ruffins got over him and tried to stab him again. Gerald grabbed Ruffins' arm and Price ran.
Ruffins' brother, Michael, testified that Gerald was trying to protect Price and that he did not see Gerald with a weapon. Michael further testified that he saw Gerald grab Ruffins from behind in a bear hug and that Price ran off.
Detective Ashley, the investigating officer, testified that Michael, in an earlier statement and contrary to his trial testimony, said that when Gerald reached Ruffins to get him off of Price, Ruffins stood up, confronted Gerald, and then Gerald stepped back. At that time, Michael said he then saw that Gerald had been stabbed and saw a knife in Ruffins' hand.
Dr. George McCormick, the coroner, testified that Gerald had been stabbed between the second and third ribs on the front left side of his chest to a depth of five inches. The blade passed into his lung and caused his death. Dr. McCormick opined that the wound was intentional due to the path of the blade going toward Gerald's heart, the fact the knife was embedded to the hilt, and the path was not consistent with Gerald falling on the blade because it had spread the ribs.
Ruffins' father, Louis Ruffins, Sr. testified that he saw Ruffins throw the knife into an adjoining yard after the stabbing. He estimated that the knife had an eight inch blade. The knife belonged to Louis Ruffins, Sr. and was normally kept in his boat near the side of his house.

SUFFICIENCY OF THE EVIDENCE
The proper standard of appellate review for a sufficiency of evidence claim is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The standards of review are the same for denial of a motion for post-verdict judgment of acquittal and for sufficiency to sustain a verdict. State v. Sumler, 395 So.2d 766 (La.1981); State v. Smith, 431 So.2d 106 (La.App. 1st Cir.1983); and LSA-C.Cr.P. Art. 821.
The court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation, under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-Const. Art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La. 1987).
A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. LSA-C.Cr.P. Art. 821.
LSA-C.Cr.P. Art. 851 provides in pertinent part that the court, on motion of the defendant, shall grant a new trial whenever the verdict is contrary to the law and the evidence.
LSA-R.S. 14:30.1 A(1) defines second degree murder as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. To support a conviction of second degree murder, the state must show that the defendant had specific intent to kill or inflict great bodily harm. State v. Brooks, 407 So.2d 718 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10; State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990).
*174 In essence, the evidence viewed in the light most favorable to the prosecution shows that Ruffins attacked Price without justification while armed with a large knife. Ruffins injured Price. The victim tried to protect Price by pulling Ruffins off of him. As Ruffins rose from his attack on Price, he stood face to face with the victim and plunged the knife five inches into his chest, aiming the blade at his heart. As a result of the stabbing, the victim, Gerald, died. The jury could have well concluded that Ruffins did not act in self defense, and did not stab Gerald by accident.
Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved beyond a reasonable doubt that Ruffins possessed the specific intent to kill or to inflict great bodily harm when he killed Gerald Moore by intentionally stabbing him in the chest with a knife.
The weight and credibility to be given to conflicting testimony of witnesses was squarely within the province of the jury. We do not second guess the jury's credibility evaluations beyond the sufficiency of the evidence standard of review of Jackson v. Virginia, supra. The evidence in the record satisfies the sufficiency standard of Jackson, therefore, the trial court did not err in denying the motions for post-verdict judgment of acquittal and for new trial, both of which were based on a claim that the evidence was insufficient to support the jury's finding of guilt.

ERROR PATENT
Ruffins requests a review of the record for error patent. We have examined the record for error patent, LSA-C.Cr.P. Art. 920(2), and found none.

CONCLUSION
For the above and foregoing reasons, Ruffins' conviction for second degree murder is affirmed.
AFFIRMED.
NOTES
[1] Ruffins originally asserted eight assignments of error. Six of his assignments were neither briefed nor argued and are therefore deemed abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989).