641 So.2d 656 (1994)
STATE of Louisiana
v.
Gary Joseph LEROUX.
No. 94-KA-133.
Court of Appeal of Louisiana, Fifth Circuit.
July 26, 1994.
*657 John M. Crum, Jr., William D. O'Regan, III, Dist. Attys. Office, Parish of St. John the Baptist, Edgard, for plaintiff/appellee, State of Louisiana.
Robert M. Becnel, Becnel, Landry & Becnel, LaPlace, for defendant/appellant, Gary Joseph Leroux.
Before BOWES, DUFRESNE and WICKER, JJ.
BOWES, Judge.
The defendant, Gary Joseph Leroux, appeals his conviction for the second degree murder of Frederick Johnson. We affirm.

*658 FACTS

On the evening of July 6, 1991, the defendant shot and killed Fredrick Johnson when he fired several shots at the victim. Johnson had been walking through the parking lot of Keating's Bar in LaPlace, Louisiana, and was virtually unknown to the defendant. Leroux, aged 16 at the time of the offense, was arrested on July 10, 1991 at his home in the presence of his parents. On March 4, 1992, the matter was transferred to the district court pursuant to LSA-R.S. 13:1571.1 and on March 5, 1992, the defendant was indicted for second degree murder in violation of LSA-R.S. 14:30.1. Following a plea of not guilty, the matter was set for trial. Trial was held from February 15-18 and at its conclusion the jury reached a unanimous verdict of guilty as charged. The defendant moved for a post-verdict judgment of acquittal and for new trial, both of which motions were denied. On November 17, 1993, defendant received the mandatory sentence of life in prison without benefit of parole, probation or suspension of sentence.
In his confession admitted at trial, the defendant gave the following account of the events surrounding the murder.
After "getting off" from work at Weber's IGA, the defendant and Stuart Andry, a companion, decided that they "were just going to ride and drink" so they each purchased a four pack of Jack Daniels wine coolers from the store. At approximately 7:00 p.m., they left the store and after dropping off a co-employee, they headed to the defendant's house where they picked up an ice chest.
Thereafter, they began driving around the eastbank of St. John Parish while consuming wine coolers as well as two six-packs of beer. When they passed by a group of males standing on a corner, the defendant, who was drunk already, said "if I had a gun you know that's what people be blowing in Kenner you know drive by and shoot somebody, and just joking about it ..." They then proceeded to the defendant's house where he retrieved a.22 rifle before heading back to LaPlace.
Upon observing an individual, the defendant said "not him-not him" and they continued driving. After they came up a street which "made a loop", they passed by the victim and the defendant "just started pulling the trigger." When Stuart realized that "I was pulling the trigger he took off because I fell back in the seat."
Later, they returned to the scene and observed the victim "laying there." The defendant exited the truck and approached the victim's body. He then returned to the truck and Stuart brought him home.
The defendant additionally explained that "we wasn't planning on killing nobody, just mostly the idea of having a gun."
At trial the defendant testified that while riding around and drinking they came up with the "idea of go get a gun and scare somebody, and just ride and shoot in the air and scare somebody on the side the road or whatever." He stated that he thought he was "shooting over his [victim's] head and scared him away." He added that he must have been drunk because he didn't remember going home and he denied having any specific intent to kill.
Joseph Leroux, the defendant's father, testified that he saw the defendant when he came home on the night of the murder and he was drunk.

ASSIGNMENT OF ERROR NUMBER ONE
It was error for the trial court to allow the introduction of evidence of a recreation of events where there was no showing of substantial similarity.
The defendant contends that the trial court erred in admitting evidence of "recreation of evens" which indicated that the weapon was discharged within relatively close proximity of the victim. In support of this contention, the defendant argues that the circumstances between the actual facts of the case and the recreation were not substantially similar considering the following discrepancies:
(1) The shooting occurred at approximately 10:30 p.m. on July 6, 1991, whereas the recreation test was conducted between 9:00 a.m. and noon on May 28, 1992;
*659 (2) The defendant was five feet seven inches tall and fired the shots from a truck while the expert who conducted the recreation was six feet tall and fired the test shots from a standing position;
(3) The victim was struck by six shots and seven shell casings were found at the scene, whereas the expert fired a series of three shots each; and
(4) The recreation failed to take into account the movement of the victim after he was shot.
At trial, Pat Lane of the State Police Crime Laboratory testified that he went to the scene of the crime on a morning so that he could test fire the defendant's rifle in order to determine "actually how far" it would eject cartridge casings. He was provided with the locations where the victim's body and cartridge casings were found and he placed a centrifugal bullet trap "at a position at the feet." Standing a distance of twenty-three feet from the trap, he fired a sequence of three shots into the trap. He then moved to another position about the same distance from the trap where he fired from a standing position a sequence of three shots with one velocity of ammunition and a second sequence with a different velocity. He found that the rifle ejected the cartridge casings "somewhere between ... a two and three o'clock position to the right hand side, almost perpendicular to the direction of what we're shooting" and "those distances range from about eight feet, twelve feet, and a maximum of sixteen feet was the farthest." Based upon those findings, he concluded that the shooter probably was relatively close to the victim "with a maximum distance of sixteen feet." Additionally, Lane identified a videotape of the test firing and the tape was played for the jury.
In State v. Boyer, 406 So.2d 143, 149 (La. 1981), the Louisiana Supreme Court made the following pronouncement regarding reconstructed evidence:
The probative value of such an experiment or reconstructed evidence depends in large measure upon the extent to which the reconstructed scene was identical to or similar to that which existed at the time the incident happened. State v. Brumfield, 329 So.2d 181 (La.1976).
In Boyer, the defendant claimed he heard a telephone ringing two separate times while he was in a detached garage, but did not hear a gunshot. In order to rebut this testimony, the state conducted a decibel test which showed if the telephone was audible outside the house, so was a gunshot. The defense objected, claiming the test did not take into account the fact it was raining at the time of the gunshot.
In holding that the decibel test in Boyer, supra was admissible, the Court found the failure to take rainfall into account (it was raining at the time of the incident) did not make the scene dissimilar, since the rainfall was not a critical element for purposes of the test.
The Boyer Court concluded that while a recreation need not be exact in every detail, the important elements of the test must be identical or very similar to the scene in order to have probative value.
In the present case, the important elements of the test duplicated the crime scene. The expert used the same rifle as did defendant, and discharged it at the scene at approximately the same distance from the victim's position that the defendant claimed he was situated when he fired. (Information on the position of the body and location of the bullet casings at the scene were given Mr. Lane by the investigating officers). He concluded that it was not possible for the weapon to have been fired from a vehicle passing at that location, and his opinion was that defendant was at a maximum of sixteen feet from the victim when he fired. He was thoroughly and skillfully cross-examined by defense counsel, who questioned him on each discrepancy. Mr. Lane concluded that "...factoring in all of the `could be's' and `may be's' and everything else, those casings will not end up where they were located from a vehicle driving down the street. I don't care if you're driving a thousand miles an hour. It's just, it's physically not going to happen."
The primary importance of the test was to determine the distance from which defendant *660 actually fired. Because the distances involved were measured in feet, not inches, or fractions of an inch, the discrepancies raised by the defendant are at best negligible, if (as in discrepancy numbers one and three) even relevant. Therefore, we conclude that the trial court correctly admitted the evidence at trial.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
It was error for the trial court to allow the District Attorney to repeatedly badger the defendant while cross examining him.
The defendant contends that the trial court erred by allowing the prosecutor to pose "a continual barrage of repetitive questions" to the defendant while cross examining him; however, the defendant does not cite any examples of such questioning.
The trial judge has wide discretion in controlling the examination of witnesses and a ruling as to repetitiveness is to be disturbed only on a showing of abuse of discretion. State v. Wiley, 614 So.2d 862 (La.App. 2 Cir.1993). A conviction will not be reversed due to the judge's control of the examination of a witness unless an abuse of discretion is shown. State v. Chapman, 410 So.2d 689 (La.1981), appeal after remand, 436 So.2d 451 (La.1983).
The defendant has not demonstrated an abuse of discretion by the trial court, nor has our review of the record disclosed any.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
It was error for the trial court to give the District Attorney a break between the direct testimony and the cross examination of the defendant.
The defendant contends that the trial court erred in granting the state's request for a recess for lunch following the direct examination of the defendant thereby providing additional time to prepare for cross-examination.
The granting of a recess, like that of a continuance, is a matter within the sound discretion of the trial court, and will not be reversed in the absence of a showing of an abuse of discretion. State v. Telford, 384 So.2d 347 (La.1980).
In the instant case the prosecutor requested a recess for lunch at the conclusion of the defendant's direct examination which ended at 12:30 p.m. and the judge ordered the court to stand in recess until 1:00 p.m. Thus, it appears that the recess was granted for the purpose of allowing the jury to eat lunch and was obviously necessary at this time in any event. Furthermore, the recess for lunch lasted only thirty minutes to one hour, the usual time period for lunch, which hardly allowed the prosecution much time for preparation of cross-examination in addition to eating lunch. Therefore, again we hold that the defendant has not shown any abuse of discretion by the trial judge, nor has he established that he was prejudiced by the recess.
This assignment is completely meritless.

ASSIGNMENT OF ERRORS NUMBERS FOUR AND FIVE
The trial court committed error in failing to give sufficient jury instructions regarding intoxication and specific intent.
The defendant contends that the trial court erred in failing to give the "complete set" of jury instructions which he requested regarding the defense of intoxication.
A requested special charge shall be given by the court if it does not require qualification, limitation or explanation and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge which is given. LSA-C.Cr.P. art. 807; State v. Smith, 414 So.2d 1237 (La.1982); State v. Wiggins, 556 So.2d 622 (La.App. 5 Cir.1990).
The refusal to give a requested special charge does not warrant reversal of a defendant's conviction unless it prejudices substantial rights of the accused. LSA-C.Cr.P. art. 921; State v. Marse, 365 So.2d *661 1319 (La.1978); State v. Richardson, 616 So.2d 225 (La.App. 5 Cir.1993).
The defendant's special requested charges read as follows:
Jury Instruction Number One
Whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute a particular type or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act. Any intoxication, not necessarily total, may be considered on the question of intent.
Jury Instruction Number Three
The term "intoxication" means a condition resulting from the drinking of alcoholic beverages which impair a person's normal facultieseither of perception or will or judgmentso that he or she no longer has the capacity to know the nature of the act he is committing, or the capacity to form an intent to commit such an act.
The trial court refused to give instruction number one, but the court did charge the jury as follows:
The fact that a defendant was in an intoxicated or drugged condition at the time of the commission of a crime is usually not a defense. However, when the circumstances indicate that the defendant voluntarily became intoxicated and that his intoxicated condition precluded the presence of a specific criminal intent required in a particular crime this fact constitutes a defense for the prosecution of that crime. It is not a defense to a crime requiring only general criminal intent of criminal negligence.
Additionally, the trial court amended instruction number three to charge as follows:
The term intoxication means a condition resulting from the drinking of alcoholic beverage which impairs a person's normal capacity to form a specific intent to kill or inflict great bodily harm.
LSA-R.S. 14:15 provides in pertinent part:
The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
* * * * * *
(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.
Thus voluntary intoxication can be a defense only in cases where specific intent is a necessary element of the crime if the intoxication precluded the capacity to form that intent. See State v. Leeming, 612 So.2d 308 (La.App. 5 Cir.1993). Consequently, we hold that the requested charge number one was not "wholly correct" as required and that it was potentially misleading as it invited the jury to consider any level of intoxication when determining the question of intent. Therefore, the trial court did not err in refusing to give the requested charge.
Furthermore, the trial court did not err in amending requested charge number three. By such action, the court limited the charge to concern only the effect of intoxication on the capacity to form specific intent which was in fact the matter at issue.
A thorough review of the jury charges actually given has convinced us that all of the charges relevant to the defense of intoxication were correctly included by the trial court. We hold that no rights of the accused, substantial or otherwise, were prejudiced by the refusal of the trial court to give the defendant's requested special charges.
In connection with the above observations, we consider the next assignment of error, number six, that it was error for the trial court to give jury instruction number five, requested by the state, which put the burden of proof on the defendant to prove the defense of intoxication.
The challenged instruction reads as follows:
The burden of proof is on the defendant who claims voluntary intoxication to prove the existence of intoxication and the magnitude of that intoxication.
*662 This instruction concerned the issue of proving the existence of voluntary intoxication rather than specific intent, and that burden definitely rests on the defendant. State v. Leeming, supra; State v. Martinez, 524 So.2d 871 (La.App. 3 Cir.1988), writ denied, 525 So.2d 1047 (La.1988). Therefore, we hold that the trial court did not err by giving the challenged instruction and that the trial court correctly charged the jury as to the burden of proof for the intoxication defense.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER SIX
The evidence presented in the instant case does not justify a verdict of guilty to the crime of second degree murder.
The defendant contends that the state did not prove beyond a reasonable doubt that the defendant had the requisite intent to commit second degree murder.
In evaluating the sufficiency of the evidence, the standard to be used by the appellate court is whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La. 1988).
LSA-R.S. 14:30.1 A(1) defines second degree murder as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. Thus, to support a conviction of second degree murder, the state must show that the defendant had specific intent to kill or inflict great bodily harm. State v. Ruffins, 597 So.2d 171 (La.App. 2 Cir.1992).
In State v. Leeming, supra, this Court stated the following statement regarding specific intent:
Specific intent exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Graham, 420 So.2d 1126 (La.1982); State v. Edge, 504 So.2d 1169 (La.App. 5th Cir.1987), writ denied, 507 So.2d 226 (La.1987). The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard. State v. Huizar, 414 So.2d 741 (La.1982).
Voluntary intoxication can be material when the circumstances indicate that the intoxication precluded the presence of a specific criminal intent. LSA-R.S. 14:15. Intoxication is in the nature of an affirmative defense to a criminal charge and the burden is upon the defendant to prove the existence of that condition at the time of the offense. Whether voluntary intoxication in a particular case is sufficient to preclude specific intent is a question to be resolved by the trier of fact. State v. Freeman, 517 So.2d 390 (La.App. 5th Cir. 1987).
See also State v. Richardson, 616 So.2d 225 (La.App. 5 Cir.1993).
The evidence adduced at trial in the case before us established conclusively that the defendant shot the victim six times from a distance which was "relatively close to the victim" and that the shots struck the victim in the torso, left thigh and left arm.
In addition to the testimony and confession of Leroux and the testimony of his father, the defendant also presented the testimony of Dr. Charles Smith and Dr. Richard Richoux.
Dr. Smith, a psychiatrist, examined the defendant in October of 1991 and again in January of 1993. Dr. Smith diagnosed Leroux as an alcoholic with a sociopathic personality. Defendant told him that he did not remember the events of the night of the murder, and that these blackouts are not uncommon to an alcoholic. However, he could not testify as to whether defendant actually had such a blackout, or even how much alcohol the defendant had consumed.
*663 While some persons commit irrational acts while under the influence of alcohol, the doctor replied as follows when examined relative to the question of intent:
It's very difficult to answer, Judge. I think that one may have an intent, and one's intent can for one reason or the other, and particularly while intoxicated, change. That's the nature of intoxication. There can be a very aberrational act.
EXAMINATION BY MR. CRUM:
I understand. But my question is does the fact that you have been drinking do anything, or do away with necessarily the specific intent?
The intent, I suppose, is still there. Whether it's obeyed or not is another matter.
Dr. Richoux examined defendant in February of 1993, shortly before the trial, and reviewed prior reports from Dr. Smith and other doctors (whose testimony was not adduced at trial). Dr. Richoux felt that consumption of alcohol can in some instances preclude specific intent. He also felt that defendant is an alcoholic, and felt that Leroux had had a partial alcohol induced blackout on the night in question. He agreed that defendant had sociopathic tendencies. Dr. Richoux also was of the opinion that because a person is severally intoxicated, it does not mean he is unable to formulate a specific intent.
Further, Dr. Richoux testified that an alcoholic blackout does not mean the person didn't know what he was doing, but just that he forgot. Finally, he agreed that persons with sociopathic personalities were less likely to tell the truth than the average person.
After considering all the events, testimony and evidence, the jury, as trier of fact, resolved the issue of specific intent against defendant and found that he had the requisite specific intent when he killed the victim, despite his claim that his level of intoxication precluded the formation of such intent. The jury apparently rejected the testimony of Leroux and his father and mother, which is, indeed, in their province to do.
They also had the testimony of the physicians, but this testimony obviously did not establish to the jury's satisfaction, nor to ours, that defendant was unable to form the requisite intent. In fact they found that he could. It is the role of the factfinder to weigh the respective credibilities of the witnesses and give such credit as it sees fit to each witness; and an appellate court is not empowered to second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard. State v. Richson, 501 So.2d 885 (La.App. 5 Cir.1987).
Considering the forensic event and the number and placement of the shots and the close range from which they were fired, along with the confession of defendant, we hold that a rational trier of fact could, indeed, reasonably reject the defense of intoxication and find, beyond a reasonable doubt, that the defendant specifically intended to kill or do great bodily harm to the victim.
We further hold that the "possibility" that Leroux did not remember the incident due to his voluntary intoxication does not mandate a conclusion that he did not in fact, at the time he shot the victim, intend to inflict bodily harm.
This assignment of error is meritless.

ERROR PATENT DISCUSSION
An error patent discussion conducted in accordance with State v. Williams, 593 So.2d 753 (La.App. 5 Cir.1992) and LSA-C.Cr.P. art. 920 reveals but one error.
In imposing the sentence, the trial court failed to give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence even though such an allowance is mandatory. LSA-C.Cr.P. art. 880; State v. Sherman, 532 So.2d 908 (La.App. 5 Cir.1988).
Accordingly, the conviction and sentence are affirmed. However, the sentence imposed is amended to give defendant credit for time served in compliance with LSA-C.Cr.P. art. 880.
*664 CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED.