767 So.2d 893 (2000)
STATE of Louisiana
v.
Alva CEPRIANO.
No. 00-KA-213.
Court of Appeal of Louisiana, Fifth Circuit.
August 29, 2000.
*895 Margaret S. Sollars, Thibodaux, Louisiana, Attorney for Defendant/Appellant.
Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Cornelius Regan, Richard R. Pickens II, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Plaintiff/Appellee.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
DALEY, Judge.
Defendant, Alva Cepriano, appeals his convictions and sentences for attempted second degree murder, a violation of LSA-R.S. 14:27:30.1, and aggravated rape, a violation of LSA-R.S. 14:42. On appeal, he assigns the following errors:
1. The evidence was insufficient to support the defendant's convictions for attempted second degree murder and aggravated rape.
2. The Trial Court erred by ordering consecutive sentences when the evidence *896 showed that the convictions were the result of one continuous act and the defendant had no prior criminal history.

Procedural History
On June 24, 1999, the Jefferson Parish Grand Jury filed an indictment charging the defendant, Alva Cepriano, with attempted second degree murder and aggravated rape. The defendant was arraigned on June 29, 1999, at which time he pled not guilty. The defendant filed a Motion to Appoint a Sanity Commission, and on September 9, 1999, the trial court held a sanity hearing and found the defendant competent to stand trial. On October 6, 1999, the trial court held a hearing on the defendant's Motion to Suppress Confession and denied that motion. On November 10, 1999, the trial court held a hearing to determine the admissibility of DNA evidence at trial. On that date, the trial court denied the defendant's Motion to Suppress the DNA evidence.
On December 13, 1999, the defendant was tried before a 12-person jury, who unanimously found defendant guilty as charged on both counts. On January 12, 2000, the defendant was sentenced to serve 50 years imprisonment on the attempted second degree murder conviction, and life imprisonment on the aggravated rape conviction. The trial court ordered the sentences to be served consecutively and without benefit of probation, parole, suspension of sentence, or "good time." The defendant filed a timely appeal.

FACTS
This case involves the aggravated rape and attempted murder of the victim, C.C.[1], by the defendant, Alva Cepriano. C.C. told the jury that, on May 15, 1999, she was babysitting at the home of Josh and Angie Carmadelle, who lived down the street from her. At the time, C.C. was 15 years old. She told the jury that she had fallen asleep with the children in Josh and Angie's bedroom, when she heard a knock on the bedroom door. She opened the bedroom door to find the defendant, whom she knew as Ali. The defendant had entered the house. The defendant asked her if Josh was home, and she replied that he was not and went back to sleep. Later that evening, the defendant returned and asked the victim to go into the kitchen and write Josh a note for him, which she did, though she thought it strange that he told her to make it from "Jack" when she knew that was not his name.
While she was in the kitchen with him, the defendant grabbed her from behind, and dragged her, struggling, to another bedroom in the house. C.C. testified that the defendant was choking her, and punched her in the eye, telling her to "shut up." C.C. told the jury that, when they reached the bedroom, the defendant threw her on the ground, unzipped his pants, and forced her to perform oral sex on him. Next, the defendant took her clothes off and had forcible sexual intercourse with her. C.C. testified that she was struggling, "trying to get him off of" her. After the rape, C.C. felt the defendant cut her neck with something. She screamed and tried to get up, but the defendant started strangling her. Being strangled was the last thing C.C. remembered before falling to the floor unconscious. The defendant testified that, once she fell to the floor, he wrapped a wire around the unconscious victim's neck.
When Angie Carmadelle came home she looked for C.C. and found her in the bedroom. She told the jury that when she found her, C.C. was unconscious and not breathing. She told the jury that C.C.'s hands and face had turned blue.
Dr. David Dunn, an expert in the field of obstetrics and gynecology, testified that he performed a rape examination on C.C. He told the jury that his examination revealed trauma consistent with forced intercourse. His examination also revealed that C.C. *897 had a black eye, bruising around the eye, ligature marks on her neck, and marks on her neck, that appeared to have been made by a serrated knife. Dr. Dunn took vaginal swabs from C.C. and submitted those swabs for testing. The swabs were tested by a forensic scientist from the Jefferson Parish Crime Lab, who testified that the vaginal swabs and the sample taken from C.C.'s underwear tested positive for sperm and seminal fluid. The samples were submitted to Relia Gene, a testing company for DNA analysis, and that analysis revealed the DNA found on the vaginal swabs and on C.C.'s panties matched the DNA of the defendant.
The defendant testified on his own behalf. He admitted to raping C.C., but testified that he did not hit her. The defendant told the jury that, although he put a wire around C.C.'s neck, held a steak knife to her neck, and placed a bag over her head and choked her, he was not trying to kill C.C. The defendant testified that he was only trying to "knock her out" so that he could leave. Joshua Carmadelle, the defendant's "stepbrother" and the person for whom the victim was babysitting, testified for the defense. He told the jury that the defendant told him that he tried to kill C.C., and that when he left, he thought that C.C. was dead. Based on the foregoing, a unanimous jury found the defendant to be guilty as charged on both counts alleged against him.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant argues that the evidence was insufficient to convict him for attempted second degree murder because the prosecution failed to show that he had specific intent to kill the victim. The defendant also argues that the prosecution failed to prove the amount of force necessary to support a conviction of aggravated rape.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia,[2] requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.[3]
The defendant was convicted of attempted second degree murder, a violation of LSA-R.S. 14:27:30.1. Second degree murder is the killing of a human being when the offender has specific intent to kill or inflict great bodily harm.[4] Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent may be inferred from the circumstances and actions of the defendant.[5] To prove an attempted murder, whether first or second degree, the State must establish, beyond a reasonable doubt, that the defendant specifically intended to kill a human being and that he committed an overt act in furtherance of that goal.[6] When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[7]
*898 The State argues that the evidence was sufficient to show, at least, that the defendant had the specific intent to commit great bodily harm, and, thus, the evidence was sufficient to support the defendant's conviction. The State is incorrect in this assertion. Although specific intent to inflict great bodily harm may support a murder conviction, attempted murder requires a specific intent to kill.[8]
We find several factors that point to defendant's specific intent to kill. Subsequent to raping the victim, the defendant choked the victim repeatedly, and dragged a serrated knife across her neck. Although the defendant testified that he used the blunt edge of the steak knife, Dr. Dunn told the jury that the marks on C.C.'s neck were consistent with the use of a serrated edge. The defendant testified that he did not intend to kill the victim, yet he testified that he himself knocked her unconscious three times. Further, even though the victim was unconscious, the defendant wrapped a wire around her neck strangling her, and placed a bag tightly over her head. Such actions clearly appear to evidence a specific intent to kill. Finally, Josh Carmadelle testified that the defendant told him that not only did he intend to kill the victim, he thought she was dead when he left the house. These factors are sufficient for a rational trier of fact to find that the defendant intended to kill this victim.
The defendant argues, however, that his intoxication negated his specific intent. LSA-R.S. 14:15 provides in pertinent part that: "[W]here the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime." In order to raise intoxication as a defense, the defendant must prove, by the preponderance of the evidence, that he was intoxicated. If the defendant does so, the burden of proof shifts to the State to show that specific intent was present.[9] Whether intoxication is sufficient to negate specific intent is a question for the trier of fact.[10]
Although the defendant testified at trial that he had smoked four joints of marijuana and consumed 12 beers earlier that evening, he also testified that he was able to drive from Ponchatoula to Lafitte and that he was thinking clearly enough to park the car, which was stolen, away from the scene of the incident. Moreover, the victim testified that she could not tell that he was intoxicated. The defendant did not show by a preponderance of the evidence that he was intoxicated. Therefore, the burden did not shift to the State. Further, the jury apparently did not believe that intoxication negated his specific intent. Because this question is a credibility determination made by the trier of fact, it will not be reweighed on appeal.[11]
The defendant also claims that the evidence was insufficient to convict him of aggravated rape because the State failed to prove that he attempted to overcome the victim's utmost resistance by force. The defendant contends that trial evidence shows that no threats of great bodily harm were communicated to the victim, nor that a dangerous weapon was involved in this attack. He argues, therefore, that the evidence at best supports a verdict of attempted forcible rape. The State responds that sufficient evidence supports defendant's conviction of attempted aggravated rape.
*899 Rape is the act of anal or vaginal sexual intercourse with a male or female committed without the person's lawful consent. LSA-R.S. 14:41(A). Aggravated rape occurs when the victim: (1) resists the act to the utmost, but whose resistance is overcome by force; or (2) is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; or (3) is prevented from resisting the act because the offender is armed with a dangerous weapon. LSA-R.S. 14:42(A)(1)(2)(3).
According to the defendant, the State's evidence only supports a verdict of forcible rape. The Louisiana Supreme Court stated the following in State v. Willie, 422 So.2d 1128, 1129 (La.1982):
[A]lthough the legal definition of aggravated rape as set forth in LSA-R.S. 14:42(2) is virtually identical to that of forcible rape (LSA-R.S. 14:42.1), a distinction can be made based on the "degree of force employed and the extent to which the victim resists." We concluded that it was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, aggravated rape and forcible rape, thereby assigning to the jury the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed.
Therefore, it is within the province of the jury to determine the degree of force employed in a particular case and to determine whether the act constituted aggravated, rather than forcible, rape. State v. White, 621 So.2d 884 (La.App. 4 Cir. 1993), writ denied, 631 So.2d 440. In State v. Brown, 99-172 (La.App. 5 Cir. 9/28/99), 742 So.2d 1051, 1055-1056, the defendant jumped on the victim from behind, wrestled her to the ground, and tried to separate her legs and force sexual intercourse. The victim in Brown suffered vaginal hematomas as a result of the force with which the defendant was trying to pull off her underwear. There was also testimony that the defendant bit the victim on the neck and that he ripped open her dress. This court found that these facts were sufficient to support a conviction for attempted aggravated rape.[12]
The facts in the instant case were much more severe. The defendant not only hit the victim in the face, but forced her to the ground, choking her. The victim testified that she was struggling, trying to push the defendant off, but that the defendant kept choking her and telling her to shut up. The defendant, a grown man, brutally attacked a 15-year-old girl to the point of unconsciousness. The jury, who heard testimony from both the victim and the defendant, concluded that the evidence proved that the victim resisted to her utmost. Again, the question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of witnesses will not be reweighed on appeal. State v. Rowan, supra. The evidence presented was sufficient to prove the elements of aggravated rape to a rational trier of fact.

ASSIGNMENT OF ERROR NUMBER TWO
The Trial Court erred by ordering consecutive sentences when the evidence showed that the convictions were the result of one continuous act and the defendant had no prior criminal history.
Following his convictions, the trial court sentenced the defendant to a sentence of life imprisonment for aggravated rape to be served consecutively with a sentence of 50 years of imprisonment for attempted second-degree murder. On appeal, the defendant *900 argues that the sentences were excessive because they were ordered to be served consecutively rather than concurrently.
Defense counsel orally objected to the sentences as excessive immediately after they were imposed. An oral objection to the sentence is sufficient to preserve the issue for appeal, if the defendant specifically states the grounds for his objection. A statement challenging a sentence as excessive does not set forth specific grounds, and defendant in this case, thus, preserved only his right to a review of his sentence on a bare claim of constitutional excessiveness.[13]
A sentence that is grossly disproportionate to the offense or that imposes needless and purposeless pain and suffering is constitutionally excessive.[14] Once imposed, however, a sentence will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits.[15]
The defendant was convicted of aggravated rape, a violation of LSA-R.S. 14:42, whose sentencing provision provides for a mandatory sentence of life imprisonment. The defendant was also convicted of attempted second-degree murder, a violation of LSA-R.S. 14:27:30.1. The second-degree murder sentencing provision provides for a mandatory sentence of life imprisonment. LSA-R.S. 14:30.1. The statute relating to attempt provides that if the offense attempted is punishable by life imprisonment, a defendant should be imprisoned at hard labor for at least ten, but not more than 50 years. LSA-R.S. 14:27(D)(1). Therefore, the defendant in the instant case received the maximum sentence for his conviction of attempted second-degree murder.
On appeal, the defendant does not argue that the individual sentences were excessive, but rather that the sentences were excessive because they were imposed to run consecutively. This court has held that this is an issue that need not be addressed in a review for bare constitutional excessiveness. State v. Hester, 99-426 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 104. Nonetheless, the Hester court did review the merits of a similar claim.[16]
LSA-C.Cr.P. art. 883 provides, in pertinent part:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.
The instant offenses were all part of the same transaction. There was, therefore, a presumption in favor of concurrent sentences under the article. Although the imposition of consecutive sentences requires particular justification when the crimes arise from a single course of conduct, consecutive sentences are not necessarily excessive. Such sentences are justified when the offender poses an unusual risk to public safety.[17] Although the trial judge in the instant case did not specifically state his reasons for imposing consecutive sentences, the record reveals *901 the serious nature of the crimes involved. See, State v. Williams, supra; State v. Hester, supra.
The defendant in the instant case not only brutally raped the victim, hit and choked her, the defendant strangled her until she was unconscious after he had raped her. Upon the victim's regaining consciousness, he knocked her out, according to his testimony, three times, and cut her neck with a steak knife. Although the victim was unconscious, and the rape had been completed, the defendant, nonetheless, wrapped a wire around the victim's neck tightly enough to stop her breathing, and tightly put a bag over her head. This heinous nature of this offense justifies the trial court's decision to impose consecutive sentences, and is not excessive or a violation of the trial court's vast sentencing discretion.
Accordingly, the defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Because the victim is a juvenile, she will be referred to by her initials in this opinion.
[2] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[3] State v. Rosiere, 488 So.2d 965 (La.1986); State v. Honore, 564 So.2d 345 (La.App. 5 Cir.1990), writ denied, 569 So.2d 968 (La. 1990).
[4] LSA-R.S. 14:30.1 A(1); State v. Barnes, 98-932, p. 3 (La.App. 5 Cir. 2/10/99), 729 So.2d 44, 46, writ denied, 99-1018 (La.9/17/99), 747 So.2d 1099.
[5] State v. Lewis, 98-672, p. 5 (La.App. 5 Cir. 3/10/99), 732 So.2d 556, 559.
[6] LSA-R.S. 14:27, 14:30; State v. Guccione, 96-1049 (La.App. 5 Cir. 4/29/97), 694 So.2d 1060, 1067.
[7] State v. Williams, 99-223 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 608.
[8] State v. Fauchetta, 98-1303 (La.App. 5 Cir. 6/1/99), 738 So.2d 104, 108.
[9] State v. Dammeron, 98-378, pp. 2-3 (La. App. 5 Cir. 9/29/98), 719 So.2d 1151, 1154.
[10] State v. Leeming, 612 So.2d 308, 313 (La. App. 5 Cir.1992), writ denied, 616 So.2d 681 (La.1993).
[11] State v. Leeming, supra; State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
[12] The verdict in Brown was attempted aggravated rape because the victim persistently fought off her attacker by hitting him with her shoe, and the defendant eventually broke off the attack.
[13] State v. Brown, 95-124 (La.App. 5 Cir. 5/30/95), 656 So.2d 1070.
[14] State v. Lobato, 603 So.2d 739 (La.1992); State v. Munoz, 575 So.2d 848 (La.App. 5 Cir.1991), writ denied, 577 So.2d 1009 (La. 1991).
[15] State v. Carter, 96-358 (La.App. 5 Cir. 11/26/96), 685 So.2d 346.
[16] Also see, State v. Williams, 98-1146 (La. App. 5 Cir. 6/1/99), 738 So.2d 640, 654-656.
[17] State v. Johnson, 97-867 (La.App. 5 Cir. 4/15/98), 711 So.2d 848, writ denied, 98-1293 (La.10/9/98), 726 So.2d 20.