MARION F. EDWARDS, Judge.
 

 | ¡>Defendant/appellant, Deyton Martinez (“Martinez”), appeals his conviction and sentence on a charge of attempted second degree murder. For reasons that follow, we affirm both the conviction and the sentence.
 

 Martinez and co-defendant, Manuel Salazar, were charged with one count of attempted second degree murder, a violation of La. R.S. 14:27, 14.30.1, and one count of armed robbery, a violation of La. R.S. 14:64. Martinez filed several defense motions including a motion to appoint a sanity commission. The trial judge signed the order of commitment and an order to appoint a sanity commission to examine Martinez in order to determine his capacity to proceed. The trial court ultimately found Martinez competent to stand trial. After a one-day trial, Martinez was found guilty as charged of attempted second degree murder and not guilty of armed robbery. The trial court sentenced Martinez to forty-nine and one-half years at hard labor without benefit of parole, probation, or suspension of sentence.
 

 On the same day, the State filed a multiple offender bill alleging that Martinez was a second felony offender. Martinez denied the allegations in the [.¡multiple bill. Martinez takes this timely appeal from the conviction and original sentence.
 
 [1]
 

 
 *928
 

 FACTS
 

 Martinez was convicted of attempted second degree murder as a result of a stabbing on January 27, 2006. The victim was Manuel Carrillo (“Carrillo”), a local contractor. Carrillo testified that he employed Manuel Salazar (“Salazar”) as part of a work crew. In January of 2006, Martinez came to work for him through Salazar. Carrillo testified that Martinez worked in the crew approximately three days before the stabbing occurred. Carrillo testified that he was renting a house on Ole Miss Drive in Kenner, Louisiana, to house his employees. Carrillo did not live there but had an apartment in Metairie.
 

 On the day of the stabbing, Carrillo and his crew, which consisted of Martinez, Salazar, and two other men, had a job working in a high-rise building in the Central Business District of New Orleans remodeling two stores. Carrillo testified that he and his men were unable to do the job because his crew did not bring the necessary equipment. Consequently, Carrillo dropped the men off at the rental house and left. Later, after another work call came in around noon, Carrillo returned to the rental house in his 1999 Chevy Suburban. On his way there, he called and told Salazar that he was on his way. According to Carrillo, Salazar said they were waiting for him.
 

 Carrillo arrived and parked in the driveway. He told two men, Ruby and Benny, to get Salazar. According to Carrillo, Salazar said, “Come and check something here. I mean, what — what can I bring to work.” Carrillo told Salazar not to bring anything. However, Salazar kept calling him. Carrillo testified that he | Relieved that Salazar was trying to get him to go into the house, although he did not realize it at the time. Carrillo did not enter the house. Carrillo testified that he was taking his sweater off over his head when he was stabbed from behind five times in the side. Initially, Carrillo thought he was just being hit playfully, and he did not realize that he was being stabbed until he turned around and saw the knife. It was Martinez who was stabbing him. Carrillo pushed Martinez away, but Martinez charged at him again. Carrillo grabbed Martinez by the wrist and tried to get the knife away from Martinez. Carrillo was unsuccessful, and Martinez stabbed him again. Carrillo and Martinez struggled while rolling around on the ground. But, Martinez got up faster and stabbed Carrillo again. Carrillo testified that he did not realize how badly he was hurt. Carrillo kicked Martinez from the ground, and Martinez fell. Carrillo tried to get on top of Martinez. But, Martinez got back up and stabbed Carrillo in the back.
 

 Carrillo testified that, during the fight, Salazar backed off a little and never helped him. The other two men on the crew told Salazar to pull Martinez off Carrillo. But, Salazar would not do it.
 

 Carrillo further testified that he knew Martinez was coming to kill him from the look in his eyes. Martinez stopped stabbing Carrillo, and Carrillo managed to get up, although he could not recall how he did so. Martinez tried unsuccessfully to take Carrillo’s wallet. Then, Martinez told Salazar to take the Suburban. Carrillo saw Martinez and Salazar drive off in his Suburban with Salazar at the wheel. Carrillo testified that he thought he left his keys in the ignition. He was subsequently taken to the hospital by ambulance.
 

 Carrillo testified that he did nothing to Martinez to cause the knife attack. Carrillo was stabbed eighteen times in thir
 
 *929
 
 teen different locations on his body. Five of the stab wounds were in the same place. Carrillo admitted that, on | ¿September 25, 1990, he pled guilty to forcible rape and received a sentence of approximately three years at hard labor and ten years on parole or probation until April 6, 2002.
 

 Salazar testified at trial. He stated that he was working for Carrillo in 2006. Salazar testified that he was present when Martinez stabbed Carrillo, but he denied that he participated in the crime. Salazar could not identify the knife used to stab Carrillo. According to Salazar, Carrillo did not hit, attack, or do anything to provoke the attack. Salazar testified that Carrillo just tried to defend himself.
 

 After Martinez stabbed Carrillo, Salazar picked up Carrillo’s car key off the ground. According to Salazar, Martinez did not “directly” tell him to pick up the keys with words. However, Martinez was looking seriously at him and that is why he picked up the keys. Then, he and Martinez left in Carrillo’s Suburban because Salazar was scared and wanted to get away. The two men drove around Kenner. Salazar did not see Martinez discard the knife.
 

 Salazar testified that, in connection with this incident, he pled guilty to accessory to attempted murder and accessory to armed robbery and received a five-year sentence, which he was currently serving. He also agreed to testify against Martinez. Salazar also admitted that he pled guilty to possession of marijuana on November 7, 2007.
 

 Amber Austin (“Austin”) and her mother, Barbara Wilkinson (“Wilkinson”), both testified that, on the date of the incident, they witnessed Martinez and Salazar on top of Carrillo. They initially thought Martinez and Salazar were beating Carrillo on the ground. According to Austin, Carrillo never got up during the fight. Wilkinson called 911. According to Wilkinson, Carrillo’s actions were only defensive. Later, Austin and Wilkinson realized that Carrillo was stabbed when two other men helped Carrillo get up, and they saw that Carrillo was soaked in [6blood. Both Austin and Wilkinson saw Martinez and Salazar flee the scene in a maroon Suburban. According to Austin, she went to the aid of Carrillo. Neither Austin nor Wilkinson saw any weapons around Carrillo.
 

 Lieutenant Nicholas Huth, III (“Lieutenant Huth”), an employee of the City of Kenner, testified that, when he arrived on the scene, he saw that the victim had been stabbed multiple times resulting in significant blood loss. Lieutenant Huth did not see a weapon. Lieutenant Huth testified that Carrillo informed him that Martinez stabbed him and then left in his vehicle. Lieutenant Huth called in the information to police headquarters.
 

 Detective Sergeant Cunningham (“Detective Cunningham”) testified that, while he was in route to the scene, a call went out that Carrillo’s vehicle was stolen by Martinez and Salazar. Within minutes of the call, Officer Mark Traynham found the vehicle with Martinez and Salazar inside. Detective Cunningham testified that he proceeded to where the vehicle was stopped. When he arrived, Martinez and Salazar were being ordered out of the vehicle. Salazar was the driver and Martinez was in the front passenger seat. When Martinez got out of the vehicle, Detective Cunningham observed that Martinez had bloodstains on his arm and hand, as well as on his shirt, pants, and shoes. The detective testified that he did not observe any injuries on Martinez or Salazar and that Carrillo only had defensive wounds.
 

 Austin and Wilkinson were transported to the location where the vehicle was stopped to identify the suspects and the vehicle. Both Austin and Wilkinson testified that they identified the two men who
 
 *930
 
 stabbed Carrillo. According to Wilkinson, she also identified the vehicle. Wilkinson testified that she had no doubt of her identifications. Both Martinez and Salazar were arrested.
 

 17The State also presented the testimony of Dr. Robert David Cummiskey, III (“Dr. Cummiskey”), a general surgeon who treated Carrillo in the emergency room. Dr. Cummiskey testified that there were some superficial stab wounds on the front and back of Carrillo’s neck, back, and chest. There was also a deeper stab wound on the right side of his abdomen, which necessitated surgery because it penetrated the abdomen. Dr. Cummiskey testified that an exploratory laparotomy was done to determine if any organs were damaged and, if so, to repair them. Fortunately, the surgery revealed that the stab wounds inflicted on Carrillo did not damage any major organs. Ultimately, it was determined that there were no life-threatening wounds to Carrillo’s abdomen.
 

 Martinez testified he left Houston to come to Kenner, Louisiana, for work after he was invited to do so by Salazar. He was hired as a painter. Martinez testified that, while in Kenner, he lived in Carrillo’s house for approximately a week with five other men before he was arrested.
 

 Martinez knew that Carrillo was mad concerning missing equipment at the earlier job on the day of the incident. However, Martinez believed that there were other jobs scheduled for the crew for later that day. Martinez testified that, later when he and Carrillo were the last two alone in the house on the day of the incident, Carrillo used “bad words.” According to Martinez, Carrillo said, “Bandaho,” which means “an idiot, a dumb ass ... or stupid.” Martinez testified that Carrillo was very upset and pushed him on his chest and gave him a hard slap on the right-side of his face. Martinez left the house, but the verbal attack by Carrillo continued outside.
 

 Martinez believed that he subsequently had a physical altercation with Carrillo, although he did not remember it. Martinez also did not remember having blood on his clothing when stopped by the police, and he could not explain how |sthe blood got onto his clothes. However, Martinez admitted seeing the blood on Carrillo’s clothes caused by the stabbing. Martinez denied owning a knife or ever seeing a knife. Martinez testified he did not intend to kill Carrillo, nor did he intend to steal Carrillo’s vehicle. When asked about his state of mind at the time of the altercation, Martinez responded that he did not know what was happening. He knew that he was irritated and wanted to be alone. Martinez testified that he did not know anything about someone pulling him off Carrillo. He further testified that he did not attempt to take Carrillo’s wallet. After he got off of Carrillo, he got into Carrillo’s vehicle because he wanted to be alone. The keys were in the ignition and the vehicle was turned on. Salazar drove him away in Carrillo’s vehicle. Martinez stated that he did not tell Salazar to get into the vehicle and drive or where to go.
 

 Martinez admitted that he has had a problem with his bad temper for all of his life. During anger, he has even blacked-out. When being questioned about the incident, Martinez testified, “I was out of my control” and “I was out of my senses.” Martinez initially testified that he did not stab Carrillo. Later, Martinez testified that he did not remember stabbing Carrillo but believed that it was possible that he did it. Martinez stated that the next thing that he remembered he was being stopped by the police. Martinez admitted that he was previously convicted of stealing something from a store.
 

 
 *931
 

 LAW AND ANALYSIS
 

 In brief to this Court, Martinez assigns two assignments of error for our review. In the first assignment, he argues the evidence was insufficient to support the verdict. In the second assignment, he asserts the trial court imposed an excessive sentence.
 

 |
 
 SUFFICIENCY OF EVIDENCE
 

 Martinez claims that the evidence was insufficient to prove attempted second degree murder. Specifically, he claims that the State failed to prove that he had the specific intent to kill. In support of this argument, Martinez states that the injuries to Carrillo were slight. Martinez’s interpretation of the medical evidence is that Carrillo’s wounds were superficial. The medical expert found that, even the deepest wound, was not life threatening. In fact, Carrillo did not know that he was stabbed until he saw the knife. Martinez contends that, while his fight with Carrillo “was perhaps unprovoked and without justification,” the evidence shows that it was not done with the intent to kill. Martinez relies on
 
 State ex rel.
 
 Hickerson,
 
 [2]
 
 in suggesting that, even though the knife certainly may have qualified as a dangerous weapon, the manner in which it was used belies the claim that murder was his intent. Martinez claims that, because the extent of the victim’s injuries was minimal, there is insufficient evidence to support the conclusion that he had the specific intent to kill. Martinez urges this Court to set aside the verdict and impose a responsive verdict of aggravated battery.
 

 In response, the State argues that the relevant question is not whether Martinez inflicted life threatening wounds upon Carrillo but, whether, he had the specific intent to kill Carrillo. The State contends that the only plausible conclusion, based upon the evidence, was that Martinez intended to kill Carrillo. The State distinguishes
 
 State ex rel. Hickerson,
 
 arguing that, in
 
 Hickerson,
 
 the defendant was stabbed once in the shoulder, whereas, in this case, the victim was stabbed multiple times on various parts of his body, showing an intent to kill. The State argues that Martinez’s ability to inflict deadly wounds is not relevant, since his actions in inflicting the number of stab wounds to certain areas of the victim’s | inbody demonstrates an intent to kill. We agree with the State’s argument that Martinez’s reliance on
 
 Hickerson
 
 is misplaced.
 

 The constitutional standard for testing the sufficiency of the evidence requires that a defendant’s conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
 
 [3]
 
 In the present case, Martinez was convicted of attempted second degree murder.
 

 Second degree murder is the killing of a human being when the offender has specific intent to kill or inflict great bodily harm.
 
 [4]
 
 La. R.S. 14:27(A) states, in pertinent part, “Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended.”
 

 Specific intent to inflict great bodily harm is sufficient to support a murder conviction, but a second degree attempted murder charge requires proof of specific
 
 *932
 

 intent to
 
 kill.
 
 [5]
 
 Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
 
 [6]
 
 Specific criminal intent, as a state of mind, need not be proven as fact but may be inferred from the circumstances and the actions of the accused.
 
 [7]
 

 In order to prove attempted second degree murder, the State must establish, beyond a reasonable doubt, that the defendant specifically intended to kill a human being and that he committed an overt act in furtherance of that goal.
 
 [8]
 
 “When circumstantial evidence forms the basis of the conviction, such evidence must |nconsist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.”
 
 [9]
 

 We have applied the applicable law to the facts of this case and find the State has met its burden to prove Martinez had specific criminal intent to kill Carrillo and that he stabbed the victim multiple times in furtherance of this intent. Accordingly, we find the evidence sufficient to support the conviction of attempted second degree murder.
 
 [10]
 

 EXCESSIVE SENTENCE
 

 In his second assignment, Martinez claims that his sentence is unconstitutionally excessive because the injuries sustained by the victim were minimal and not life threatening. Martinez further argues that he is not the worst type of offender for which the maximum penalties are reserved.
 

 The State claims that the mal court not abuse its discretion in sentencing Martinez. The State notes that the trial court took into account the cruel nature of the offense, the number of times the victim was stabbed, and the random acts of violence displayed by Martinez. The trial court determined that such actions indicated that a custodial environment was needed and that a lesser sentence would depreciate the seriousness of the offense.
 

 The State argues that, even though the injuries to the victim may not have been life threatening, the crime committed was both senseless and a horrific act of violence. The State notes that Carrillo undoubtedly suffered unbearable pain as Martinez continued to stab him as he tried to defend himself.
 

 In the present case, the record indicates that Martinez orally objected to his sentence as excessive at the time of sentencing. However, he did not make an oral motion for reconsideration of sentence, nor did he file a written motion for 112reconsideration of sentence as required by La.C.Cr.P. art. 881.1(B). The failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
 
 [11]
 
 Failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, merely limits a defendant to a bare review of the sentence
 
 *933
 
 for constitutional excessiveness.
 
 [12]
 
 Therefore, we will only review Martinez’s sentence for constitutional excessiveness.
 

 The Eighth Amendment to the United States Constitution and Louisiana Constitution Article I, § 20 prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.
 
 [13]
 
 A sentence that is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering is unconstitutionally excessive, even if it is within the statutory limits.
 
 [14]
 

 In sentencing the defendant, a trial court should consider the defendant’s personal history such as age, family ties, marital status, health, employment record, as well as his prior criminal record, seriousness of offense, and the likelihood of rehabilitation in determining an appropriate sentence.
 
 [15]
 

 In reviewing a sentence for ex-cessiveness, the appellate court must consider the crime and the punishment in light of the harm to society and gauge whether the | ^penalty is so disproportionate as to shock its sense of justice.
 
 [16]
 
 In general, maximum sentences are reserved for cases involving the most serious violations of an offense charged and the worst type of offender.
 
 [17]
 
 Nevertheless, a trial judge is afforded wide discretion in determining a sentence. An appellate court should further consider three factors in reviewing a judge’s sentencing discretion. They are: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts.
 
 [18]
 

 The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate.
 
 [19]
 
 An appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed.
 
 [20]
 
 Therefore, a sentence will not be set aside as excessive absent clear abuse of the trial court’s broad discretion.
 
 [21]
 

 In the present case, the defendant was convicted of attempted second degree murder. A conviction for second degree murder is punishable by life in prison.
 
 [22]
 
 If the offense so attempted is punishable by death or life imprisonment, the defendant shall be imprisoned at hard labor for not less than ten nor more than fifty years, without benefit of parole, probation, or suspension of sentence.
 
 [23]
 
 Therefore, the
 
 *934
 
 maximum sentence for the offense of attempted second degree murder is fifty years. The defendant was sentenced to forty-nine and one-half years, almost the maximum sentence for this offense.
 

 In the present case, at sentencing, the trial court provided Reasons and noted that Martinez’s sentence was based upon consideration of the guidelines set forth |14in La.C.Cr.P. art. 894.1. The trial judge imposed a sentence of forty-nine and one-half years at hard labor without benefits. The trial judge stated that Martinez was in need of a custodial environment. The trial court found that, based upon the evidence, Martinez manifested deliberate cruelty to the victim and used a dangerous weapon. The trial judge noted that the multiple stab wounds were enough to justify Martinez’s sentence. The trial court also found that the defendant committed a senseless crime of violence and that a lesser sentence would depreciate the seriousness of the crime.
 

 Upon review, we do not find the trial court abused its discretion in sentencing Martinez.
 
 [24]
 

 For reasons set forth in this opinion, we affirm Martinez’s conviction and sentence.
 

 AFFIRMED.
 

 [1]
 

 . A defendant may appeal from a judgment which imposes a sentence. La.C.Cr.P. art. 912(C)(1). Further, a trial court retains jurisdiction to re-sentence a defendant as a multiple offender despite a pending appeal. La.
 
 *928
 
 C.Cr.P. art. 916(8). Therefore, we will consider both the conviction and the sentence in this appeal despite the pending multiple bill hearing.
 
 See, State v. Gilbert,
 
 99-2338 (La.2/4/00), 758 So.2d 779, 779-80.
 

 [2]
 

 . 411 So.2d 585 (La.App. 1 Cir.1982),
 
 writ denied,
 
 413 So.2d 508 (La.1982).
 

 [3]
 

 .
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
 

 [4]
 

 .La. R.S. 14:30.1.
 

 [5]
 

 .
 
 State v. Cepriano,
 
 00-213 (La.App. 5 Cir. 8/29/00), 767 So.2d 893, 897.
 

 [6]
 

 . La. R.S. 14:10(1).
 

 [7]
 

 .
 
 State v. Lewis,
 
 97-160 (La.App. 5 Cir. 7/29/97), 698 So.2d 456, 459,
 
 writ denied,
 
 97-2381 (La.3/27/98), 716 So.2d 881.
 

 [8]
 

 .
 
 State v. Cepriano,
 
 767 So.2d at 897.
 

 [9]
 

 .
 
 State v. Cepriano,
 
 767 So.2d at 897.
 

 [10]
 

 .
 
 See, State v. Hebert,
 
 05-1004 (La.App. 5 Cir. 4/25/06), 930 So.2d 1039.
 

 [11]
 

 . La.C.Cr.P. art. 881.1(E).
 

 [12]
 

 .
 
 State v. Zaldivas,
 
 02-690 (La.App. 5 Cir. 12/30/02), 836 So.2d 577, 583,
 
 writ denied,
 
 03-0705 (La.10/17/03), 855 So.2d 757.
 

 [13]
 

 .
 
 State v. Nguyen,
 
 06-969 (La.App. 5 Cir. 4/24/07), 958 So.2d 61, 64,
 
 writ denied,
 
 07-1161 (La.12/7/07), 969 So.2d 628.
 

 [14]
 

 .
 
 Id.
 
 at 64.
 

 [15]
 

 .
 
 State v. Crawford,
 
 05-494 (La.App. 5 Cir. 1/31/06), 922 So.2d 666, 669.
 

 [16]
 

 .
 
 State v. Nguyen,
 
 958 So.2d at 64.
 

 [17]
 

 .
 
 State v. Stacker,
 
 02-768 (La.App. 5 Cir. 12/30/02), 836 So.2d 601, 607,
 
 writ denied,
 
 03-0411 (La.10/10/03), 855 So.2d 327.
 

 [18]
 

 .
 
 Id.
 

 [19]
 

 .
 
 State v. Napoleon,
 
 01-1222 (La.App. 5 Cir. 2/26/02), 811 So.2d 980, 983.
 

 [20]
 

 . La.C.Cr.P. art. 881.4(D).
 

 [21]
 

 .
 
 State v. Napoleon,
 
 811 So.2d at 983.
 

 [22]
 

 . La. R.S. 14:30.1(B).
 

 [23]
 

 . La. R.S. 14:27(D)(1)(a).
 

 [24]
 

 .
 
 See, State v. Robicheaux,
 
 03-1063 (La.App. 5 Cir. 12/30/03), 865 So.2d 149,
 
 writ denied,
 
 04-0381 (La.6/25/04), 876 So.2d 830.