SUSAN M. CHEHARDY, Judge.
|2On appeal, defendant challenges the sufficiency of the evidence used to convict him of second degree murder. For the following reasons, we affirm defendant’s conviction, vacate his sentence in part, and remand.

Procedural History

On September 3, 2009, a Jefferson Parish Grand Jury issued a true bill of indictment charging defendant, Michael Williams, with second degree murder, in violation of La. R.S. 14:30.1. The three-day trial of this matter commenced on July 26, 2011. After hearing the testimony and evidence, the twelve-person jury unanimously found defendant guilty as charged on July 28, 2011.
On August 10, 2011, the trial judge denied defendant’s motions for post verdict judgment of acquittal and new trial. Thereafter, defendant waived the statutory delays and the trial judge sentenced him to life imprisonment without benefit of parole, probation, or suspension of sentence. Defendant filed a written motion for appeal, which was granted on August 26, 2011.
| -Pacts
On the afternoon of April 26, 2009, several concerned citizens in the Scotsdale Subdivision of Jefferson Parish reported *1092 hearing shots fired to the Jefferson Parish 9-1-1 Call Center. The first call came in at approximately 2:38 p.m.
Deputy Eric Blandford of the Jefferson Parish Sheriffs Office (“JPSO”) was the first officer to respond to the scene. Upon arrival, he observed an African-American male, lying on his side, bleeding, in a grassy area near the intersection of Florence and Esther Streets. Deputy Blandford was unable to detect any signs of life from the victim, who was identified as Terry Redmond.
Detective Jeffery Rodrigue of the Jefferson Parish Sheriffs Office Homicide Division, who arrived at the scene within 30 minutes, observed the victim lying in the grassy area, just off of the road, about 12 yards from the edge of a drainage canal. Detective Rodrigue noticed that the victim had multiple gunshot wounds. The crime scene technician recovered six cartridge casings from the grassy area where the victim was found. After examining those casings, Detective Rodrigue determined they were consistent with .40 caliber ammunition and had been fired from a semiautomatic firearm.
Detective Kevin Decker, who is Detective Rodrigue’s partner and a supervisor of the Homicide Division, was assigned as the case investigator. After interviewing possible witnesses, Detective Decker learned that a four-door white sedan fled the immediate area traveling northbound on Angus Street within minutes of the shooting. Detective Rodrigue explained that Angus Street was the street on the other side of the canal, just past the grassy area. Further, Detective Decker also learned that an African-American teenager named Michael Williams had a physical altercation with the victim and chased the victim with a gun seconds before the victim was shot.
|4On April 27, 2009, Detective Decker obtained a warrant for the arrest of Michael Williams, defendant herein, and JPSO apprehended him on April 30, 2009 at Ataría Bradley’s house. Ataría Bradley testified that defendant was dropped off at her house the day before by someone driving a white car.
On or about July 9, 2009, Michael Gordon [1] gave a statement to Detective Decker stating that he had known both the victim and defendant for years. He testified that he saw defendant and the victim almost every day. He identified photographs of both defendant and the victim.
Mr. Gordon explained that, on April 26, 2009, he was standing outside of his apartment on Brown Street with his two ex-stepsons between 2:00 and 2:30 p.m. He testified that he was about 150 yards away when he saw the victim approach defendant on Angus Street. Mr. Gordon observed the men “tussling,” or grabbing and shoving.
Mr. Gordon watched as the victim pushed defendant to the ground then ran away down Brown Street. Defendant immediately jumped up and ran toward a group of four or five men, who were standing and talking on Angus Street. After a brief contact with that group, defendant chased the victim down Brown Street.
Mr. Gordon testified that, as defendant chased the victim, defendant held his right hand still, down by his side, next to his leg. Although defendant’s other hand pumped as he ran, his right hand never moved. Mr. Gordon saw the victim run toward the drainage canal then cross it with defendant *1093 running about ten feet behind him. Mr. Gordon lost sight of the victim and defendant after they crossed the canal because Brown Street turns. Within three to ten seconds after he lost sight of the victim and defendant, however, he heard multiple gunshots.
|5On July 15, 2009, Lisa Petty, who was staying at a house located at 1217 Angus Drive in Harvey, discovered a firearm in the backyard of the house. Ms. Petty stated that the house is on the other side of the canal, just past the grassy area where the victim was found. Further, the backyard is adjacent to a “cut” that many pedestrians use to go between the adjacent neighborhoods.[2] The weapon did not belong to anyone residing at the house. A JPSO Crime Scene Technician removed and secured the loaded weapon.
Subsequently, Meredith Acosta, an expert firearms examiner, examined the recovered weapon, which is a Glock pistol, and determined that the six .40 caliber Smith and Wesson cartridge cases found at the crime scene were fired by this Glock pistol.
Dr. Susan M. Garcia, an expert in forensic pathology, performed an autopsy on the 42-year-old victim in this case. She concluded that the manner of the victim’s death was a homicide and the cause of his death was multiple distant range gunshot wounds.[3] She testified that he sustained multiple gunshot wounds, with eight separate entrance wounds and seven exit wounds. She described the lethal entrance wound that did not have a corresponding exit wound as going through his liver, through his right hemi-diaphragm, his left lung, and into his back. She recovered a copper-jacketed projectile from this wound.[4]
Defendant testified that he was 16 years old in April of 2009. He denied killing the victim in this case. He denied putting a firearm in the backyard of the house on Angus Street.
| ^Initially, defendant also testified that he did not know where he was on April 26, 2009. Later, he admitted, however, that he was alone, walking up Angus Street at 1:00 or 1:30 p.m. on April 26, 2009. He reiterated that he did not know where he was at 2:30 p.m. on that date.
Defendant also denied knowing Mr. Gordon or the victim. He denied ever crossing the canal by foot. He admitted that someone driving a white vehicle dropped him off at Ms. Bradley’s house. He testified that he knew he was wanted for murder because he had seen it on television. After hearing the testimony and evidence, the jury unanimously found defendant guilty as charged.

Law and Argument

In his sole assignment of error, defendant argues that the evidence was insufficient to convict him of second degree murder. In essence, defendant argues that the State failed to adequately prove that he was the person that committed the homicide. Specifically, defendant argues that the jury erred in finding him guilty based on circumstantial evidence, which failed to prove that defendant had possession of a firearm or that he discharged a weapon. Further, defendant argues that *1094 the State failed to adequately negate the possibility that an unknown person killed the victim.
The State responds that the evidence is constitutionally sufficient to establish defendant’s guilt beyond a reasonable doubt and to exclude every reasonable hypothesis of innocence. The State contends that one witness’s testimony that defendant ran with his right hand at his side was consistent with a person running with a firearm. Further, the witness also testified that he observed defendant chasing the victim, lost sight of the victim and defendant, and, within seconds, heard multiple gunshots.
The standard of appellate review of the sufficiency of the evidence is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational 17trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04); 875 So.2d 949, 955, writ denied, 04-1605 (La.11/15/04); 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found the State proved the essential elements of the crime beyond a reasonable doubt. State v. Price, 00-1883 (La.App. 5 Cir. 7/30/01); 792 So.2d 180, 184.
Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts. State v. Kempton, 01-572 (La.App. 5 Cir. 12/12/01); 806 So.2d 718, 722. “The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438. However, this requirement does not establish a standard that is separate from the Jackson standard, but instead provides a helpful methodology for determining the existence of reasonable doubt. State v. Lathers, 03-941 (La.App. 5 Cir. 2/23/04); 868 So.2d 881, 884. To support the conclusion that the defendant is guilty beyond a reasonable doubt, all evidence, both direct and circumstantial, must be sufficient. Id.
Second degree murder includes the killing of a human being when the offender has specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1; State v. Martinez, 09-740 (La.App. 5 Cir. 3/23/10); 38 So.3d 926, 931. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. Martinez, 38 So.3d at 932. Specific criminal intent, as a state of mind, need not be proven as fact but may be inferred from the circumstances and the actions 18of the accused. Id. Specific intent to kill may be inferred from a defendant’s act of pointing a gun and firing it at a person. State v. Jackson, 03-883 (La.App. 5 Cir. 4/27/04); 880 So.2d 841, 850, writ denied, 04-1399 (La.11/8/04); 885 So.2d 1118.
Further, the State must prove the identity of the defendant as the perpetrator. See State v. Draughn, 05-1825 (La.1/17/07); 950 So.2d 583, 593, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). When the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentifieation. State v. Neal, 00-0674 (La.6/29/01); 796 So.2d 649, 657-58 cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 *1095 (2002). However, positive identification by only one witness is sufficient to support a conviction. Id. (citing State v. Mussall, 523 So.2d 1305, 1311 (La.1988) (generally, one witness’s positive identification is sufficient to support the conviction)).
In the instant case, the jury heard Michael Gordon’s description of the interaction between the victim and defendant immediately before the shooting. Mr. Gordon demonstrated to the jury how defendant was running with his right arm down. Further, Mr. Gordon recounted that he observed defendant chasing the victim then lost sight of the men within seconds of hearing multiple gunshots, which caused the victim’s death.
Defendant denied that he was “tussling” with the victim on the day of the shooting. Defendant denied that he was the shooter. Defendant initially testified that he was not in the area on the day of the shooting, but then later admitted that he was there alone just prior to the shooting.
Clearly, the jury heard and accepted Mr. Gordon’s testimony implicating defendant. The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing Iscourt may impinge on the “fact finder’s discretion only to the extent necessary to guarantee the fundamental due process of law.” State v. Mussall, 523 So.2d at 1310.
Considering the foregoing, we find, upon viewing the evidence in the light most favorable to the prosecution, that any rational trier of fact could have found that the State produced sufficient evidence at trial to prove the essential elements of second degree murder beyond a reasonable doubt, including that defendant was the shooter in this case. This assignment of error lacks merit.

Error patent discussion

We have reviewed the record for errors patent, according to La. C.Cr.P. art. 920. We note an issue of first impression emergent after Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012). In Miller, the United States Supreme Court specifically held that “the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders” convicted of homicide. The Miller court did not, however, eliminate the possibility that a sentencing judge could sentence a murderer, who was a juvenile at the time of the offense, to life imprisonment, in certain instances. The Miller Court stated, “a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles.” Id. at 2475.
In this case, defendant was convicted of second degree murder and sentenced, before Miller became law, to life imprisonment without benefit of parole, probation, or suspension of sentence as mandated by La. R.S. 14:30.1. We further note that the sentencing judge articulated numerous reasons, including this defendant’s actions of chasing a person several blocks and shooting him in the back, which shocked the judge and, thus, warranted a harsh penalty. Defendant did not assign error in his life 1 ^sentence on appeal. Accordingly, we will address only the error patent revealed in defendant’s sentence.
Because this is an issue of first impression, we rely on persuasive jurisprudence to assist our analysis of the constitutionality of sentences of life without parole for juvenile offenders. Recently, in State v. Shaffer, 11-1756 (La.11/23/11); 77 So.3d 939, 942, reh’g denied, (La.1/11/12); 77 So.3d 947, a juvenile defendant was convicted of aggravated rape and sentenced to life imprisonment. Defendant challenged *1096 his life sentence as unconstitutional under Graham v. Florida, — U.S. -, 180 S.Ct. 2011, 2034, 176 L.Ed.2d 825 (2010).[5]
The Louisiana Supreme Court found that Graham did not preclude a life sentence but rather required that a state’s sentencing scheme provide offenders, who were juveniles at the time of their offense, with a meaningful opportunity to secure release, i.e. parole, as a regular part of the rehabilitative process. Accordingly, the Shaffer court held that the trial court correctly sentenced defendant to life imprisonment but maintained defendant’s parole eligibility. Our supreme court noted that the trial judge did not address the defendant’s prison master record and corrected the issue by directing the Department of Corrections to revise the defendant’s prison master to reflect an eligibility date for consideration by the Board of Parole. Id., 77 So.3d at 942-943.
Thus, relying on the Graham, Shaffer, and, most recently, Miller, we vacate that portion of defendant’s sentence that removes any meaningful opportunity to secure release, i.e. parole, from this offender, who was a juvenile at the time of this offense. Accordingly, this matter is remanded to allow the trial judge to sentence defendant in |na manner allowing parole eligibility.[6] Further, the trial judge is instructed to correct the hard labor commitment and to direct the Department of Corrections to revise the defendant’s prison records to reflect an eligibility date for consideration by the Board of Parole. Cf. Shaffer, 77 So.3d at 942-943. Accordingly, defendant’s conviction is affirmed. Defendant’s sentence is vacated in part and remanded for resentencing in conformity with Miller v. Alabama, supra.

AFFIRMED; SENTENCE VACATED IN PART; REMANDED

. This witness admitted that he had two misdemeanor and one felony convictions. Further, he admitted that he had used illegal drugs in the past. He testified, however, that he had been "clean” for three years. He stated that he did not have any "beef” with defendant.

. The homeowner, who has resided at this home for more than 25 years, testified that she had discovered discarded weapons on two prior occasions in her backyard.

. She testified that "distant range” is any distance greater than three feet.

.Meredith Acosta examined the projectile and determined that the projectile was consistent with .40 caliber class ammunition, but she did not have enough information to conclude that the projectile recovered from the victim was fired by the recovered firearm.

. During the 2012 legislative session, the Louisiana Legislature passed Acts 2012, No. 466, which became effective on August 15, 2012, to bring Louisiana's statutory sentencing scheme regarding juvenile non-homicide offenders into compliance with Graham v. Florida, supra. This act added La. R.S. 15:574.4(D)(1), which allows parole eligibility, once certain conditions are met, for offenders who were under the age of eighteen years at the time of the commission of the offense, except those serving a life sentence for first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1).

. There is nothing in the law precluding the trial judge from sentencing defendant with similar conditions to parole eligibility to those enumerated, as follows, in La. R.S. 15:574.4(D)(1):
(a) The offender has served thirty years of the sentence imposed.
(b) The offender has not committed any disciplinary offenses in the twelve consecutive months prior to the parole eligibility date.
(c) The offender has completed the mandatory minimum of one hundred hours of pre-release programming in accordance with R.S. 15:827.1.
(d) The offender has completed substance abuse treatment as applicable.
(e) The offender has obtained a GED certification, unless the offender has previously obtained a high school diploma or is deemed by a certified educator as being incapable of obtaining a GED certification due to a learning disability. If the offender is deemed incapable of obtaining a GED certification, the offender shall complete at least one of the following:
(i) A literacy program.
(ii) An adult basic education program.
(iii) A job skills training program.
(f) The offender has obtained a low-risk level designation determined by a validated risk assessment instrument approved by the secretary of the Department of Public Safety and Corrections.
(g) The offender has completed a reentry program to be determined by the Department of Public Safety and Corrections.